

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 27, 2015**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| ROBERT LEWIS ADKINS, SR., | § § | Case No. 12-10314-RLJ-7 |
| Debtor. | § § § | |
| | § § | |
| HARVEY L. MORTON, Trustee of the R.L. Adkins Corp. Liquidating Trust, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Adversary No. 13-01028 |
| ROBERT LEWIS ADKINS, SR., | § § § | |
| Defendant. | | |

### **MEMORANDUM OPINION**

Defendant, Robert L. Adkins, Sr. (Adkins), moves to dismiss the dischargeability actions brought against him by the plaintiff, Harvey Morton, Trustee of the R.L. Adkins Corp. Liquidating Trust. Adkins submits that Morton lacks standing to bring such actions because they were not specifically retained and assigned to him in the chapter 11 plan confirmed by the Court in the bankruptcy case of R.L. Adkins Corp (RLAC).[1] Morton disagrees, arguing that retention of the dischargeability counts is not required or necessary.

## Background

The facts relevant to this adversary proceeding arise from Adkins's involvement in RLAC. RLAC is a Texas corporation that was owned and controlled by Adkins until it was forced into bankruptcy. RLAC was initially placed in an involuntary chapter 7 proceeding on July 1, 2011, but was later converted to chapter 11 on August 11, 2011. Three months later, upon the Court's order directing the appointment of a chapter 11 trustee, Morton, who had served as the chapter 7 trustee, was appointed as the chapter 11 trustee. On February 28, 2013, the Court approved the Second Amended Disclosure Statement, and on May 13, 2013, the Court confirmed the Second Amended Chapter 11 Plan (the "RLAC Plan"). The RLAC Plan was proposed by Scott Oils, Inc., a creditor of RLAC.

The RLAC Plan established a Liquidating Trust which included estate causes of action not sold or released under the Plan. *See* RLAC Plan §§ 6.4 and 6.5. The RLAC Plan provided for the appointment of Harvey Morton as the Liquidating Trustee of the Liquidating Trust. *Id.* § 6.8(a). The Liquidating Trustee has "the power to prosecute all Retained Causes of Action in the name of the Liquidating Trust or as necessary in the name of the Debtor" as permitted by § 1123(b)(3) of the Bankruptcy Code. *Id.* § 6.8(b). The Plan defines Retained Causes of Action

---

[1] The issues raised here involve two bankruptcy cases—the chapter 11 case of RLAC (Case No. 11-10241) and the underlying bankruptcy case of this adversary proceeding, Adkins's personal chapter 7 case (Case No. 12-10314).

**PAGE 2**

as "all estate causes of action belonging to the Debtor and estate based on federal or state law, and any claims, counterclaims, rights, defenses, setoffs, recoupments, and actions in law or equity arising under the Bankruptcy Code or applicable non-bankruptcy law." *Id*. § 6.1(e). A lengthy list of causes follows this statement that includes claims for breach of fiduciary duty and other common law actions; it does not include dischargeability actions. *See id.*

Adkins filed an individual chapter 7 petition on October 28, 2012. On July 30, 2013, Morton, as the RLAC Liquidating Trustee, filed the present adversary action against Adkins, in his personal chapter 7 case, seeking recovery for Adkins's alleged breach of fiduciary duties and a determination that the debt arising from such claim is not dischargeable under § 523(a)(4) and (6) of the Code.[2] Morton also objects to three proofs of claim filed by Adkins in the RLAC bankruptcy case. By his motion here, Adkins argues that since the dischargeability counts were not specifically reserved in the RLAC Plan, Morton lacks standing and should be judicially estopped from bringing such actions. Adkin's motion invokes Rules 12(b)(1) and (b)(6), respectively.[3]

I.

Generally, once a chapter 11 plan is confirmed, the estate ceases to exist and the debtor-in-possession's authority to pursue claims also expires. *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351, 355 (5th Cir. 2008) (citing *In re Ice Cream Liquidation, Inc.*, 319 B.R. 324, 333 (Bankr. D. Conn. 2005)). A party may still enforce a claim or interest once held by the estate if it was properly retained in the plan, however. *Id.*; *see* 11 U.S.C. § 1123(b)(3). "For a debtor to preserve a claim, the plan must expressly retain the right

---

[2] Section 523(a)(4) excepts from discharge any debt for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

[3] Fed. R. Civ. P. 12(b)(1) and (b)(6), made applicable by Fed. R. Bankr. P. 7012.

**PAGE 3**

to pursue such actions." *United Operating*, 540 F.3d at 355 (quoting *In re Paramount Plastics, Inc.*, 172 B.R. 331, 333 (Bankr. W.D. Wash. 1994)) (internal quotation marks omitted). The reservation must be "specific and unequivocal." *Id.*

In *United Operating*, the Fifth Circuit set out the initial parameters for what constitutes a "specific and unequivocal" reservation. The court held that there was no proper reservation to pursue fraud, breach of fiduciary duty, and negligence claims when those claims were not specifically included in the plan. *Id.* at 356. The court also held that a "blanket reservation" is not a proper reservation. *Id.* In *Spicer v. Laguna Madre Oil & Gas II, LLC (In re Texas Wyoming Drilling, Inc.)*, the Fifth Circuit relaxed the view that a plan needs to specifically identify a claim for that claim to be properly reserved. 647 F.3d 547 (5th Cir. 2011). In doing so, the court held that a court may review the disclosure statement to determine whether a post-confirmation debtor has standing to pursue a claim. *Id.* at 551. The court ultimately found that a post-confirmation debtor had standing to pursue avoidance actions when the plan reserved "claims under Chapter 5 of the Bankruptcy Code," and the disclosure statement stated "various potential avoidable transfers that can be recovered under Chapter 5." *Id.* at 549, 552.

The policy underlying the requirement for the proper reservation of claims is grounded on "the nature of a bankruptcy, which is designed primarily to secure prompt, effective administration and settlement of all debtor's assets and liabilities within a limited time." *United Operating*, 540 F.3d at 355 (quoting *In re Kroh Bros. Dev. Co.*, 100 B.R. 487, 495 (Bankr. W.D. Mo. 1989)) (internal quotation marks omitted). "To facilitate this timely, comprehensive resolution of an estate, a debtor must put its creditors on notice of any claim it wishes to pursue after confirmation." *Id.* (citing *Harstad v. First Am. Bank*, 39 F.3d 898, 903 (8th Cir. 1994)). Creditors are entitled to proper notice "about claims that will be pursued post-confirmation under

the proposed plan, either because those claims might enlarge the estate, or because the claims might be aimed at the creditor himself. Armed with this information, so the theory goes, the creditor can adjust its vote accordingly." *In re Gulf States Long Term Acute Care of Covington, LLC*, 487 B.R. 713, 725 (Bankr. E.D. La. 2013) (quoting *CLC Creditors' Grantor Trust v. Sonnenschein Nath & Rosenthal LLP (In re Commercial Loan Corp.)*, 363 B.R. 559, 570 (Bankr. N.D. Ill. 2007)) (internal citations and quotation marks omitted).

The requirement to properly reserve a claim as a condition to its post-confirmation survival derives from § 1123(b)(3) of the Bankruptcy Code. Section 1123(b)(3) simply provides that a plan may provide for the retention and enforcement by a proper estate representative of any *claim* belonging to the debtor or the estate. 11 U.S.C. § 1123(b)(3). The *claim* at issue here that requires liquidation is the action against Adkins for his alleged breaches of fiduciary duties. The Code defines a claim as "a right to payment." 11 U.S.C. § 101(5)(A). Whether such claim, as potentially reduced to a debt of Adkins, is dischargeable is not addressed by § 1123(b)(3). Section 523, the dischargeability provisions, explicitly addresses both the substantive and procedural requirements for potential (a)(4) and (a)(6) *debts* of the debtor. *See* § 523(c)(1).[4] As the Trustee points out, had the RLAC Plan not reserved the breach of fiduciary duty claim, the Trustee's dischargeability counts would likely be jeopardized. The RLAC Plan does, however, list breach of fiduciary duty claims among the claims retained and assigned to the Liquidating Trustee. Section 1123(b)(3) does not apply to the dischargeability issues.

---

[4] Section 523(c)(1) provides:

> Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and hearing, the court determines such debt to be excepted from discharged under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

11 U.S.C. § 523(c)(1).

**PAGE 5**

**II.**

Adkins also contends that the dischargeability counts must be dismissed under the doctrine of judicial estoppel. The Court disagrees with this point, as well. "Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *Superior Crewboats, Inc. v. Primary P&I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 334 (5th Cir. 2004) (citing *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). The purpose of this doctrine is to protect the integrity of the judicial system, rather than the litigants. *Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji)*, 698 F.3d 231, 235 (5th Cir. 2012) (citing *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 205 (5th Cir. 1999)). "[T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 261 (5th Cir. 2012) (quoting *Coastal Plains*, 179 F.3d at 208) (internal quotation marks omitted). In the context of bankruptcy, "judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011).

In the Fifth Circuit, courts consider three factors in determining the applicability of judicial estoppel: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Love*, 677 F.3d at 261; *see Oparaji*, 698 F.3d at 235; *Reed*, 650 F.3d at 574; *Superior Crewboats*, 374 F.3d at 335.

The Court agrees with the points raised by the Trustee. First, to the extent the RLAC Plan can be construed as an assertion of an inconsistent prior position, such position was taken

by the plan proponent, Scott Oils, Inc., a creditor of RLAC.  The Court does not construe such circumstance as constituting an inconsistent position taken by either the debtor or the Trustee.  It is certainly not an inconsistent position that was adopted by the Court.  Any failure on the part of RLAC or Scott Oils does not judicially estop the Trustee.  *See Reed*, 650 F.3d at 573 ("absent unusual circumstances, an innocent trustee can pursue for the benefit of creditors a judgment or cause of action that the debtor fails to disclose in bankruptcy.")  Second, unlike the construction of § 1123(b)(3) that requires proper reservation of claims as a condition to their survival after confirmation, there is no similar requirement on the debtor's part, much less the Trustee's, to list or provide notice to creditors generally of potential dischargeability complaints.  The dischargeability question is in essence a potential follow-on determination that is made if there is a valid claim that becomes a debt of the debtor, the debtor here being Adkins.  The claim, and Adkins's potential debt, stems from the breach of fiduciary duty claims that were reserved.  Third, Adkins has been fully aware of the potential dischargeability issues; he has agreed to multiple extensions for filing such actions.  Requiring the reservation of dischargeability charges serves no purpose.

Adkins's motion seeking dismissal of the Trustee's dischargeability counts will be denied.

### End of Memorandum Opinion ###